PIRTLE v. FELSENTHAL LAND & TOWNSITE COMPANY.

Opinion delivered July 11, 1910.

1. SALES OF LAND—RIGHT TO RESCIND—TIME.—The provision in an executory contract for the sale of town lots to be selected by lot "that if the purchaser, after personal examination by him, is not satisfied with the lot drawn, the full amount paid will be refunded on the day of allotment" is for the benefit of the purchaser, and the stipulation that the refunding should be made on the day of allotment is not of the essence of the contract. (Page 18.)

2. SAME—RIGHT TO RESCIND—TIME.—Even if time were of the essence in a contract which stipulated that a purchaser of a town lot to be selected by a drawing might, if dissatisfied with his allotment, have his money refunded to him on the day of allotment, the seller could not

take advantage of the buyer's failure to demand such refund if the seller afforded the buyer no opportunity on the day of such allotment to express his dissatisfaction and demand the refunding of his purchase money. (Page 19.)

Appeal from Union Chancery Court; *J. M. Barker,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The Felsenthal Land & Townsite Company is a corporation owning a tract of land in Union County, Arkansas, near the town of Felsenthal, which it proposed as a townsite, and platted into lots. These lots were offered for sale. Appellant became a purchaser of ten of the lots under the following contract for each lot purchased:

"The Felsenthal Land & Townsite Company, of Felsenthal, Arkansas, received of Henry C. Pirtle five ($5.00) dollars as a deposit on an application for certificate for one lot in Felsenthal, Arkansas, which said certificate shall provide that if the purchaser, after personal examination by him, is not satisfied with the lot drawn, the full amount paid will be refunded on the day of allotment. The remaining payments are to be made to the above named company at its home office as follows: ten dollars ($10.00) in thirty days, ten dollars ($10.00) in sixty days, and fifteen dollars ($15.00) in ninety days from this date.

"G. W. Tugwell, Salesman."

The other receipts were duplicates of the above except the number and date of issue. Appellant paid to appellee under these contracts the sum of $275. The manner in which the lots were designated and set apart to the purchasers was described by appellant as follows:

The time for allotment was fixed for July 4, 1905, and was something like this: For each lot bought the purchaser received a numbered certificate or receipt, a duplicate of which was put in a sealed envelope, and these envelopes were all put into one basket, and the name of each purchaser was put into a sealed envelope, and these envelopes were all put into another basket; one man took from the basket containing the sealed certificates one envelope, opened it and called the number of the lot; and another man took from the other basket an envelope, opened it and called the name, and that name drew that lot, and the two were pinned together and passed to another man.

This procedure lasted until about 3 o'clock P. M., when the allotment was finished.

The judges and clerks then repaired to a room in its bank building for the purpose of giving to each purchaser the numbers of the lots drawn for him.

Appellant was present at the allotment, and received, between four and five o'clock P. M., the numbers of five of the lots included in his purchase. The agents of the appellee did not give appellant the numbers of the remaining five lots until the next day. Appellant examined the lots by the numbers given him July 4, between five and seven o'clock P. M., and was dissatisfied with them. He went immediately to the place designated for refunding to dissatisfied purchasers, to make known his dissatisfaction with the lots and to demand a return of his money. Appellee had designated but one place where dissatisfied purchasers could demand a return of their money. These were admitted one at a time through one door, were waited on, and passed out another door in the rear of the building. When appellant returned to demand his money, he found several hundred dissatisfied purchasers massed in front of the entrance ahead of him seeking admittance. On account of the throng, appellant could not gain admittance, which he continued to seek until 10:30 o'clock P. M. of July 4. He then retired, but left agents with instructions to remain, and if they effected an entrance to express for him his dissatisfaction and to demand the return of his money. These agents remained until about 1:30 o'clock A. M., of July 5, and, not being able to gain admittance, also retired. Appellant returned about daybreak next morning to the place, but none of appellee's agents were there. Ike Felsenthal, the manager of appellee, appeared between 8 and 9 o'clock A. M., and appellant made known to him his dissatisfaction and demanded the return of his money. Felsenthal refused to refund to appellant his money on the ground that appellant had not applied for it on the day of the allotment. The lots were low and marshy, subject to overflow and practically worthless. Appellee tendered to appellant a deed to five of the lots, but appellant refused to accept it. Appellant brought this suit in the chancery court, setting up substantially the above and alleging that the arrangement provided for dissatisfied purchasers to demand and to have their money refunded was concocted with the

fraudulent intent of preventing appellant from making known his dissatisfaction and of demanding the return of his money. Judgment was prayed for $275, with interest from July 5, 1905.

Appellee answered the complaint, setting up that it had complied with its contract, "that appellant failed to make demand for the return of his money on the day of the allotment, and that it mailed appellant a deed for the lots allotted to him, and for which he had paid, which deed he holds." Appellee denied that "it conspired so that appellant could not reach its agents on the day of the allotment, but asserted that it did everything to facilitate the handling of the crowd present on the day of the allotment, and that it kept a large force of men at work all night to wait on all who applied."

The court, upon the issue made by the pleadings and the evidence which established the facts substantially as above set forth, made the following findings:

"The court finds that July 4, 1905, expired at 12 o'clock P. M. of the same day. The court further finds that the plaintiff failed on the day of allotment to make any demand of the defendant company for the purchase price of said lots, and failed to offer to return said lots to said company on said day. The court further finds that, as to the said five lots upon which the sum of $75 has been paid, the defendant company failed to furnish the plaintiff in apt time the numbers of the lots and the numbers of the blocks in which said lots were located, but that said defendant company did on the day of said allotment in apt time furnish to the plaintiff the lot numbers and the blocks of said five lots upon which the plaintiff had made the payment of $200. The court further finds that the plaintiff is not entitled to recover anything of the defendant as to said five lots whereof the payment of $200 has been made, for the reason that on said day no demand was made by plaintiff, and no offer was made by him to return said lots to said company. The court further finds that, though no offer was made to return, no demand was made for the purchase money paid on said other lots; but that the failure of defendant company to furnish the numbers of said lots and blocks in apt time on said day excused the plaintiff from making said demand."

And the court rendered the following decree:

"It is therefore considered, ordered and decreed by the court that the plaintiff have and recover of and from the defendants the sum of $75 with six per cent. interest thereon to this date, towit: Total, $75 with six per cent. interest thereon from this date until paid, for which he may have execution, and that his prayer for $200 additional be denied. It is further ordered and decreed that the cost accrued herein shall be paid equally by the plaintiff and defendant."

The appellant has duly prosecuted this appeal.

*J. B. Moore,* for appellant.

Appellant should have had judgment for interest. 36 Ark. 355; 89 Ark. 41; 43 Ark. 275; 46 Ark. 87; Const. 1874, art. 19, § 13; Kirby's Dig. § 5379. Appellant will be excused from his failure to make demand for his money on July 4. 65 Ark. 324; 61 Ark. 312; 43 Ark. 185; 27 Ark. 61; 25 Ark. 138; 31 Ark. 319; 38 Ark. 174; 90 Ark. 103.

*Gaughan & Sifford,* for appellee.

Time was of the essence of the contract. 82 Ark. 581; 21 L. R. A. 127; 162 U. S. 404; 78 Ark. 306.

WOOD, J., (after stating the facts). The written instrument in evidence witnessed an executory contract upon the part of appellee to sell appellant certain lots to be selected by lot, upon the payment of the purchase money in the manner specified. The provision in the contract "that if the purchaser, after personal examination by him, is not satisfied with the lot drawn, the full amount paid will be refunded on the day of allotment," is for the benefit of the purchaser, and shows that the contract of purchase on the part of appellant was not to be complete or executed until he had an opportunity for personal examination of the lots drawn and was satisfied with them. If, after having such opportunity, he was dissatisfied, there was no contract of purchase, and the money he had deposited in the mean time was due him. The relation of debtor and creditor was created by the terms of the contract between appellee and appellant as to the money deposited by the latter with the former, the moment appellant was not satisfied with the lots, and the contract clearly contemplated that, if the purchaser was dissatisfied, the money he had paid would be refunded to him. Appellee did not specify that the time the money was to be refunded—the day of allotment—was to be of

the essence of the contract. There is nothing in the contract itself or in the evidence to show that the time for refunding the money was to be of the essence of the contract. On the contrary, the evidence shows that appellee did not regard time of the essence. For it continued the time when the money might be refunded until after the day of allotment.

This court in *Atkins* v. *Rison,* 25 Ark. 138, through Judge COMPTON, said: "As a general rule, time is not deemed, in equity, to be of the essence of the contract unless the parties have expressly so treated it, or it necessarily results from the nature and circumstances of the contract (2 Story's Equity, § 776) ; and, even in cases where it clearly appears to have been the intention of the parties to make time of the essence of the contract, equity will relieve the party in default from a forfeiture if he shows a sufficient excuse for nonperformance at the time specified."

But, even if time were of the essence, equity, under the evidence in this record, would not permit appellee to declare the right of appellant to demand a return of the money on the day of allotment forfeited. It would be unjust and a fraud upon the right of appellant for appellee to refuse to refund him his money because he did not demand its return *on the day of allotment,* when appellee had made no adequate arrangement by which appellant could make such demand.

Appellant exercised the utmost diligence and persistency in his efforts to make such demand on that day, but the plan which appellee had provided by which the money could be demanded by and refunded to dissatisfied purchasers on the day of allotment was wholly insufficient. It really amounted to a denial by appellee of any opportunity to appellant to express on the day of allotment his dissatisfaction and to demand the return of the money he had paid appellee.

The evidence showed that it would have taken at least four places like the one provided to have given the dissatisfied throng of purchasers an opportunity to demand the return of their money. The conduct of appellee with reference to the manner and methods provided for refunding the money to appellant was such as to excuse appellant from failing to make a demand for his money on the day of allotment, even if that day was of the

essence of the contract. Equity will not declare a forfeiture under the circumstances disclosed by the evidence in this case.

The court erred in not rendering judgment for appellant for the full amount claimed in his complaint. The judgment is therefore reversed, and the cause is remanded with directions to cancel the deed of appellee to appellant and to enter judgment for appellant against appellee in the sum of $275, with interest at six per cent. per annum from July 5, 1905, till the day the judgment herein directed is entered.